UNITED STATES, Appellee,

v.

**Private, (E–1) Kendall W. HAPPEL, SSN 481–82–6461, United States Army, Appellant.**

**SPCM 13383.**

U. S. Army Court of Military Review.

25 Aug. 1978.

Colonel Edward S. Adamkewicz, Jr., JAGC, Major Benjamin A. Sims, JAGC, and Major D. David Hostler, JAGC, were on the pleadings for appellant.

Colonel Thomas H. Davis, JAGC, Lieutenant Colonel R. R. Boller, JAGC, Captain Lee D. Schinasi, JAGC, and Captain James W. Hewitt, Jr., JAGC, were on the pleadings for appellee.

Before CLAUSEN, CARNE and THORNOCK, Appellate Military Judges.

OPINION OF THE COURT

THORNOCK, Judge:

The appellant, pursuant to his guilty plea, was convicted in a bench trial of a six-day AWOL in violation of Article 86, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 886, and breaking arrest in violation of Article 95, UCMJ, 10 U.S.C. § 895. The sentence, as approved was a bad-conduct discharge, confinement at hard labor for 60 days and forfeiture of $265.00 pay per month for two months.

Appellant urges that the military judge erred by improperly admitting four records

of punishment under Article 15, UCMJ, 10 U.S.C. § 815, citing *United States v. Booker*, 5 M.J. 238 (C.M.A.1977). Appellant further urges that the bad-conduct discharge be disapproved.

We have carefully reviewed *Booker* and cases interpreting that decision. *See United States v. Booker*, 5 M.J. 246 (C.M.A. 1978); *United States v. Provance*, 4 M.J. 819 (A.C.M.R.1978); *United States v. Gordon*, 5 M.J. 653 (A.C.M.R.1978); *United States v. Taylor*, 5 M.J. 669 (A.C.M.R.1978); *United States v. DeOliveira*, 5 M.J. 623 (A.C.M.R.1978); and *United States v. Washington*, 5 M.J. 615 (A.C.M.R.1978).

■ From our study of the above cases, unpublished opinions of this Court, and the appellate history of cases with similar allegations of error, it is clear that in the Army, admission into evidence of properly executed records of Article 15 punishments is not prejudicial error. Further it is apparent that those properly executed and filled out *records of punishment* meet the minimum requirement of the *Booker* mandate for a voluntary, knowing and intelligent decision to forego or waive removal to a criminal proceeding. *United States v. Booker*, 5 M.J. 238, 243 (C.M.A.1977); *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). We so hold in the case *sub judice*.

Moreover, the presentencing portion of the courts-martial is somewhat analogous to the "presentence report" provided the sentencing authority in the federal system and in many state systems. Its purpose is to provide information upon which to base a sentence. In the federal system, those reports have no adversary representation and are based largely on interviews by a probation officer of friends, associates and victims. The reports are almost totally hearsay with virtually no protection or information given to the accused. Records of nonjudicial punishment with the protections provided an offender are a far cry from the information used in the federal system. These records are and should be properly admissible to show the character and disciplinary record of the accused. Unlike records of summary courts-martial which were at issue in *Booker*, records of punishment under Article 15 cannot invoke the escalator clause for punishment no matter how many records of punishment are available. Section B, paragraph 127c, Manual for Courts-Martial, United States, 1969 (Revised edition).

■ Appellant, contrary to his sworn testimony at trial, now asks that the bad-conduct discharge be disapproved as being too severe. He asked, in fact demanded, that his trial defense counsel argue for a bad-conduct discharge rather than a long period of confinement. That testimony and argument were obviously persuasive as the military judge granted him his desire.*

* Applicable portions of the appellant's testimony are as follows:

Q. Now Private Happel, if you had your choice between a bad conduct discharge and a long period of confinement at hard labor, which would you prefer?

A. Bad conduct discharge.

Q. You want me to argue for a bad conduct discharge?

A. Yes, I do.

Q. Do you have any desire to remain in the Army?

A. No, I don't.

Q. Have I advised you that the ineradicable stigma of a punitive discharge is commonly recognized by our society and the repugnance with which it is regarded is evidenced by the limitations which are placed on employment opportunities and other advantages which are enjoyed by one whose discharge characterization indicates that he has served honorably?

A. Yes, sir.

Q. Have I further indicated to you that a punitive discharge will clearly affect your future with regard to your legal rights, economic opportunities and social acceptability?

A. Yes.

Q. Have I also advised you that a bad conduct discharge is a severe punishment and that a person who receives such a discharge is denied substantially all benefits administered by the Veterans Administration and for all practical purposes, all those administered by the Army Establishment?

A. Yes.

Under these circumstances and from review of the entire record, we do not view the sentence as being disproportionate.

Accordingly, the findings of guilty and the sentence are AFFIRMED.

Senior Judge CARNE concurs.

Chief Judge CLAUSEN not participating.

Q. Knowing all those things do you still want me to argue for a bad conduct discharge?
A. Yes.
Q. And is this against the advice I have given you?
A. Yes.

· · · · ·

Q. Do you understand that for all practical purposes there is little or no chance of getting a bad conduct discharge upgraded?
A. Yes.
Q. And knowing all of these things do you still want me to argue that you get a bad conduct discharge as opposed to other forms of punishment?
A. Yes. ·